**In re Rebecca ROTHMAN, Debtor.**

**Bankruptcy No. 880–05089–21.**

United States Bankruptcy Court, E.D. New York.

June 12, 1987.

## CERTIFICATE OF CONTEMPT

CECELIA H. GOETZ, Bankruptcy Judge:

On March 23, 1987, this Court issued an order directing the New York State Department of Taxation and Finance ("State Tax Commission") to show cause why an order should not be entered determining it to be in violation of this Court's Order of Discharge, dated April 4, 1986. This Order was predicated on a complaint made by the debtor, Rebecca Rothman, by letter asserting that the State Tax Commission has been attempting to collect from her certain debts from which she claimed to have been discharged.

A hearing was held before the undersigned on April 30, 1987, at which the debtor appeared *pro se,* but the State Tax Commission, after writing this Court a letter dated April 2, 1987 explaining its position, did not appear.

Upon all the proceedings heretofore had herein, the Court certifies:

## FINDINGS OF FACT

(1) The debtor filed a petition for relief pursuant to Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 1301 *et seq.,* on August 27, 1980.

(2) The State Tax Commission filed a proof of claim on October 24, 1980. It claimed the total amount owed by the debtor for state taxes to be $998.75, with interest through August 27, 1980. This claim was based on an arrearage of $161.69 for the year 1976 and $837.06 for the year 1979.

3. No amended claims were ever filed by the State Tax Commission in the Chapter 13 proceeding.

4. The debtor amended her plan to conform with the State Tax Commission's claims. Her plan provided for payment of priority tax as the State Tax Commission in the amount of $998.75. Her plan was confirmed on July 15, 1981.

5. The debtor completed her plan payments on December 13, 1985 and was discharged on April 4, 1986.

6. According to the trustee's final report, the State Tax Commission received full payment on its claim.

7. The Order of Discharge issued to the debtor provides:

An order for relief having been entered in the case of the individual above-named, a plan having been confirmed by the court, all payments under the plan having been completed by the debtor, and the court not having approved any written waiver of discharge executed by the debtor subsequent to the order for relief, it is ordered that

the debtor be and he hereby is discharged from all debts provided for by the plan or disallowed under 11 U.S.C. § 502 except any debt

(1) provided for under 11 U.S.C. § 1322(b)(5);

(2) of the kind specified in 11 U.S.C. § 523(a)(5);

(3) based on an allowed claim filed under 11 U.S.C. § 1305(a)(2) if prior approval by the trustee of the debtor's incurring such debt was practicable and was not obtained; and that

the commencement, continuation or employment of *any action, process or act to collect, recover or offset as a personal liability of the debtor or from property of the debtor any debt discharged under title 11,* United States Code, whether or not the discharge of such

debt was waived, be and it hereby is enjoined. (Emphasis added).

8. Under date of August 2, 1985, Thomas G. O'Connor of the Accounts Receivable Verification Unit of the State Tax Commission, wrote the debtor that "Income Tax plus statutory charges totaling $1,812.54 was due as of May 4, 1981" for the tax year 1976. Additional interest charges brought the total amount sought to $2,732.54.

9. In response to inquiries, under date of January 20, 1986, the debtor received a Field Memorandum from Al Locke, a Tax Compliance Agent for the State Tax Commission. This Field Memorandum lists $572.29 as the amount owed by her for 1980 taxes, and $3082.59 as the amount due for 1976 taxes. It states, "Note—upon contacting our Albany office their reply was that both the above mentioned assessments are upheld for collection per your petition dated 8/27/80 and no credits per same."

10. On April 2, 1986, the State Tax Commission issued two subpoenas, directing the debtor to appear at the Mineola District Office on April 11, 1986, and allow herself to be examined under oath in regard to the taxes allegedly due for 1976 and 1980.

11. On November 26, 1986, with respect to the efforts of the State Tax Commission to collect taxes which the debtor believed to be discharged, the State Tax Commission issued a warrant listing itself as a judgment creditor for the amount owed for the 1976 and the 1980 taxes.

12. On February 28, 1987, the debtor advised the Court of the actions taken by the State Tax Commission to collect taxes allegedly due for 1976 and 1980. She advised the Court that in January, 1987 she paid $573.00 on account of the 1980 taxes,

this being the amount claimed by the State Tax Commission.

13. In response to this Court's Order to Show Cause, issued March 23, 1987, based on the debtor's complaint, this Court received a letter dated April 2, 1987 from Elaine Wallace Braden, Senior Attorney for the State Tax Commission. Ms. Braden wrote that, based on assessments made on May 4, 1981 and August 3, 1982, (both dates subsequent to the Chapter 13 filing), the debtor owed, with accrued interest, $3,123.82 for the tax period 1976, and $580.09 for the tax period 1980. Her letter further continues:

> The 1976 assessment is the result of a federal adjustment due to unreported income. The 1980 assessment is for the debtor's 1980 income tax return that was filed late on April 14, 1982.
>
> In accordance with Bankruptcy Code § 1328 these debts are not discharged.

## DISCUSSION

### I

The debtor's taxes for 1980 did not become due until 1981, and thus constitute a post-petition liability. The debtor did not exercise her option to include such post-petition taxes under her plan and the State Tax Commission filed no claims for such taxes in the Chapter 13 proceeding. Consequently, her 1980 taxes were not discharged.[1]

Completion of a Chapter 13 plan entitles a debtor to discharge "of all debts provided for by the plan or disallowed under Section 502 of this title," with certain exceptions not relevant here. § 1328(a).

The debtor's 1980 taxes were neither "provided for by the plan," nor "disallowed under § 502," and the State Tax Commission may appropriately collect them from

---

1. This Court recently considered the effect of post-petition taxes within the context of Chapter 13. *In re Busone,* 71 B.R. 201, 205–06 (Bankr.E.D.N.Y.1987):

> Under 1322(b)(6), a debtor *may,* but need not, include in his plan provision for the payment of any such future tax liabilities as to which the taxing authority involved elects to file a claim under § 1305.

Section 1305(a)(1) creates a limited exception to the rule that a Chapter 13 plan may provide only for the payment of pre-petition claims. 5 Collier on Bankruptcy, ¶ 1305.01, at p. 1305–2 (15th Ed.). It permits a claim to be filed for taxes that become payable while a case is pending. The option to file and, thereby, to be paid under a plan lies with the taxing authority. (Footnotes omitted).

the debtor. The Bankruptcy Law imposes no impediment to such collection and such collection in no way violates the injunction contained in the order of discharge.

## II

The situation is very different, however, with respect to the 1976 taxes. Congress deliberately made the discharge available under Chapter 13 more liberal than that available under Chapter 7. There are very few exceptions to a Chapter 13 discharge. § 1328(a) of the Code provides:

As soon as practicable after completion by the debtor of all payments under the plan ... the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under § 502 of this title, except any debt—
1) provided for under section 1322(b)(5) of this title; or
2) of the kind specified in section 523(a)(5) of this title.

Neither exception covers taxes. Section 1322(b)(5) excepts claims on which the last payment is due after the plan terminates, like a long term mortgage. Section 523(a)(5) covers family obligations for alimony, maintenance and support. Significantly, § 523(a)(1) which excepts certain taxes from discharge, does not apply to a 1328(a) discharge, but only to a hardship discharge issued under 1328(b).

■ When the State Tax Commission discovered while the Chapter 13 proceeding was pending that more taxes were due for the year 1976 than it had claimed, it should have filed an amended proof of claim. Bankruptcy Rule 3002(c)(1) applies to the exact situation in which the State Tax Commission found itself. It covers a situation where pre-petition tax claims are not immediately accessible; it thus exempts "the United States, a state, or a subdivision thereof" from the strict time requirements for the filing of a proof of claim—but only on the filing of motion, which may only be granted "for cause shown."

■ The State Tax Commission, however, did nothing. It permitted the plan to

be confirmed and raised no objections to the debtor's discharge.

On facts similar to these, the courts have held pre-petition tax claims dischargeable. *See, In re Richards*, 50 B.R. 339, 341–42 (E.D.Tenn.1985); *In re Goodwin*, 58 B.R. 75, 77 (Bankr.D.Me.1986); *In re Hunt*, 59 B.R. 718 (Bankr.D.Me.1986).

The facts in *In re Hunt, supra*, are very similar to those present here. In that case, the bankruptcy court enjoined the I.R.S. from seeking to collect certain pre-petition taxes from the debtor subsequent to the debtor's discharge, where the I.R.S. had failed to file a timely proof of claim, and then raised no objection to the court's Order of Discharge.

The debtor's discharge covered all taxes due for 1976.

## CONCLUSIONS OF LAW

The debtor's 1980 taxes were not discharged in bankruptcy.

All taxes due from the debtor for the year 1976 were discharged.

The State Tax Commission's efforts to collect taxes due for 1976 from the debtor, including the issuance of subpoenas directing the debtor to appear at its offices, and of warrants that list it as a judgment creditor, violated the injunction contained in the Order of Discharge prohibiting the employment of any action, process or act to collect, recover any debt discharged under Title 11.

Accordingly, the Court finds reason to order the State Commissioner, Roderick Chu, and his officers and agents to appear and show cause why they should not be held in contempt of court.

The foregoing constitutes the Court's findings of facts and conclusions of law in support of the contemporaneous Order being entered by the Court in this matter.